# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| AMERICAN CENTER FOR LAW AND JUSTICE,<br><br><br>Plaintiff,<br><br>v.<br><br>U.S. DEPARTMENT OF STATE,<br><br><br>Defendant. | Civil Docket No. 1:16-cv-1975 (TNM) |

## **DEFENDANT'S MEMORANDUM OF LAW IN SUPPORT OF ITS MOTION FOR PARTIAL SUMMARY JUDGMENT**

## <u>TABLE OF CONTENTS</u>

INTRODUCTION ..................................................................................................................1

BACKGROUND ..................................................................................................................2

    I.  Statutory Background. ...............................................................................................2

    II.  Plaintiff's FOIA Request and This Lawsuit..............................................................3

STANDARD OF REVIEW ..................................................................................................5

ARGUMENT ........................................................................................................................7

    I.  FOIA Policy-or-Practice Claims for Equitable Relief Are Confined to Cases Where Agencies Egregiously Adhere to an Improper Policy or Practice. .....................................7

    II.  There Is No Evidence That State Has a Policy or Practice of Intentionally Refusing to Respond to FOIA Requests Until Requesters File Suit .....................................................10

    III.  The Evidence Regarding State's FOIA Resources and Training Disproves Plaintiff's Policy-or-Practice Allegations ...........................................................................................14

        A.  Resources. .......................................................................................................14

        B.  Training............................................................................................................15

        C.  Initial Response Letters....................................................................................16

    IV.  The Exercise of the Court's Equity Jursidiction Is Not Warranted ...................17

CONCLUSION....................................................................................................................20

## **TABLE OF AUTHORITIES**

**CASES**

*Am. Center for Law & Justice v. Dep't of State*
    249 F. Supp. 3d 275 (D.D.C. 2017) ....................................................... *16-19*

*Am. Center for Law & Justice v. Dep't of State*
    2018 WL 623827 (Jan. 30, 2018) ............................................................ *passim*

*Anderson v. Liberty Lobby, Inc.*,
    477 U.S. 242 (1986) ................................................................................ 6

*Bartko v. U.S. Dep't of Justice*,
    167 F. Supp. 3d 55 (D.D.C. 2016) .......................................................... 6

*Brayton v. Office of the U.S. Trade Rep.*,
    641 F.3d 521 (D.C. Cir. 2011) ................................................................ 5

*Cause of Action Inst. v. Eggleston*,
    224 F. Supp. 3d 63 (D.D.C. 2016) .......................................................... 9, 10

*Citizens for Responsibility & Ethics in Wash. v. Federal Election Comm'n*,
    711 F. 3d 180 (D.C. Cir. 2013) ............................................................... 3

*Citizens for Responsibility & Ethics in Wash.v. U.S. Dep't of Justice*,
    846 F. 3d 1235 (D.C. Cir. 2017) ............................................................. 9, 17

*Competitive Enter. Inst. v. United States Envtl. Prot. Agency*,
    153 F. Supp. 3d 376 (D.D.C. 2016) ........................................................ 9

*Ctr. for the Study of Servs. v. United States Dep't of Health & Human Servs.*,
    874 F.3d 287 (D.C. Cir. 2017) ................................................................ 9

*Daily Caller v. U.S. Dep't of State*,
    152 F. Supp. 3d 1 (D.D.C. 2015) ............................................................ 14, 19

*Dep't of the Air Force v. Rose*,
    425 U.S. 352 (1976) ................................................................................ 20

*eBay Inc. v. MercExchange, L.L.C.*,
    547 U.S. 388 (2006) ................................................................................ 17

*Freedom Watch v. Bureau of Land Mgmt.*,
    220 F. Supp. 3d 65 (D.D.C. 2016) .......................................................... 6

*Gilliam v. U.S. Dep't of Justice*,
128 F. Supp. 3d 134 (D.D.C. 2015) ........................................................... 5

*Hanes Corp. v. Millard*,
531 F.2d 585 (D.C. Cir. 1976) ........................................................... 18, 19

*Judicial Watch, Inc. v. U.S. Dep't of Homeland Security*,
211 F. Supp. 3d 143 (D.D.C. 2016) ........................................................... 10, 13

*Kissinger v. Reporters Comm. for Freedom of the Press*,
445 U.S. 136 (1980) ........................................................... 7

*Larson v. Dep't of State*,
565 F.3d 857 (D.C. Cir. 2009) ........................................................... 6

*Long v. IRS*,
693 F.2d 907 (9th Cir. 1982) ........................................................... 8

*Massachusetts v. Microsoft Corp.*,
373 F.3d 1199 (D.C. Cir. 2004) ........................................................... 17

*MedImmune, Inc. v. Genentech, Inc.*,
549 U.S. 118 (2007) ........................................................... 18

*Muttitt v. Dep't of State*,
926 F. Supp. 2d 284 (D.D.C. 2013) ........................................................... 9, 10

*Nat'l R.R. Passenger Corp. v. Consol. Rail Corp.*,
892 F.2d 1066 (D.C. Cir. 1990) ........................................................... 18

*Ocasio v. Dep't of Justice*,
67 F. Supp. 3d 438 (D.D.C. 2014) ........................................................... 6

*\*Payne Enterprises, Inc. v. United States*,
837 F.2d 486 (D.C. Cir. 1988) ........................................................... 1, 4, 8, 17

*Perry v. Block*,
684 F.2d 121 (D.C. Cir. 1982) ........................................................... 8

*Pietrangelo v. U.S. Army*,
334 F. App'x 358 (2d Cir. 2009) ........................................................... 7

*Richards v. Delta Air Lines, Inc.*,
453 F.3d 525 (D.C. Cir. 2006) ........................................................... 19

*Rocky Mountain Wild v. U.S. Forest Serv.*,
   2016 WL 362459 (D. Colo. Jan. 2, 2016) ............................................................................ 19

*SafeCard Servs., Inc. v. SEC*,
   926 F.2d 1197 (D.C. Cir. 1991) ............................................................................................ 6

*Swish Mktg, Inc. v. FTC*,
   669 F. Supp. 2d 72 (D.D.C. 2009) ...................................................................................... 18

*Weinberger v. Romero-Barcelo*,
   456 U.S. 305 (1982) ............................................................................................................ 17

**STATUTES**

5 U.S.C. § 552 ................................................................................................................................ 2

5 U.S.C. § 552(a) .................................................................................................................... 2, 4, 7

**RULES**

Fed. R. Civ. P. 56(a) ..................................................................................................................... 6

Fed. R. Civ. P. 56(c)(1) ................................................................................................................. 6

**OTHER AUTHORITIES**

Office of Inspector General, U.S. Dep't of State, *Semiannual Report to the Congress, October 1, 2016, to March 31, 2017*, ......................................................................................................... 15

## INTRODUCTION

Plaintiff American Center for Law and Justice asks the Court in Count II of its Amended Complaint to grant equitable relief against Defendant U.S. Department of State ("State") under *Payne Enterprises, Inc. v. United States*, 837 F.2d 486 (D.C. Cir. 1988) on the basis of State's alleged "policy and practice" of refusing to respond to Freedom of Information Act ("FOIA") requests "unless and until Plaintiff files suit."  Am. Compl. ¶ 78, ECF No. 25.  In considering a nearly identical policy-or-practice claim proffered by this same plaintiff in *American Center for Law & Justice v. Department of State* ("*ACLJ II*"), No. 16-2516, 2018 WL 623827, at *3 (D.D.C. Jan. 30, 2018), Judge Boasberg granted summary judgment in favor of State, "find[ing] no evidence that State has any policy, formal or otherwise, of forcing requesters to file suit before releasing material."

The Court should follow Judge Boasberg's lead and grant summary judgment to State on Plaintiff's policy-or-practice claim here.  As in *ACLJ II*, the uncontroverted evidence shows that State's policy and practice is to fully comply with its FOIA obligations.  State has no policy of intentionally violating the FOIA for any reason, much less any policy or practice of intentionally delaying its responses to FOIA requests and forcing requesters to file lawsuits.  Indeed, the absence of any such policy or practice is demonstrated by the thousands of FOIA requests that State resolves each year *without litigation*.  Moreover, State has undertaken significant and productive efforts in recent years to reduce its backlog of pending FOIA requests, again showing that State's only relevant policy is to comply with its FOIA obligations, and not to force FOIA requesters into filing lawsuits.  As to the nonexistence of such a policy or practice, there is no genuine dispute.

Plaintiff's policy-or-practice claim also fails because the alleged means by which State carries out its supposed policy or practice are directly contradicted by the summary judgment evidence.  Plaintiff alleges that State intentionally understaffs and underfunds its FOIA operations, and that it undertrains its FOIA personnel.  But the evidence shows that State has undertaken efforts to improve its FOIA training practices and bolster its resources and personnel. These efforts have resulted in reductions in State's FOIA backlog and average response times, thus showing that State is making affirmative efforts to improve its FOIA operations, and not maintaining any policy or practice of noncompliance.

## BACKGROUND

### I.     Statutory Background

The FOIA provides a means for the public to access federal government records, subject to certain exemptions.  5 U.S.C. § 552.  An agency generally must determine within twenty days after receipt of a properly submitted FOIA request, or thirty days in "unusual circumstances," "whether to comply with such request."  *Id*. § 552(a)(6)(A)(i), (B)(i).  FOIA directs that, if an agency fails to make a determination within twenty days, a requester "shall be deemed to have exhausted his administrative remedies with respect to such request," allowing the requestor to file a lawsuit to obtain the requested records.  *Id*. § 552(a)(6)(C)(i); *see also id*. § 552(a)(4)(B). "If the Government can show exceptional circumstances exist and that the agency is exercising due diligence in responding to the request, the court may retain jurisdiction and allow the agency additional time to complete its review" with respect to that particular request.  *Id*. § 552(a)(6)(C)(i).

The statute does not suggest any other consequences for an agency's failure to make a determination within twenty days.  Rather, the twenty-day timeline—and an agency's failure to

meet that timeline—sets forth a condition that must be met before a court may exercise or retain

jurisdiction over the FOIA claim.  *See Citizens for Responsibility & Ethics in Wash. v. Federal*

*Election Comm'n* ("*CREW I*"), 711 F.3d 180, 189 (D.C. Cir. 2013).

## II.    Plaintiff's FOIA Request and This Lawsuit

Plaintiff submitted to State an expansive, six-part FOIA request dated August 15, 2016.

Am. Compl. Ex. A.  Parts 1 through 3 cumulatively seek "[a]ll records, communication or

briefings created, generated, forwarded, transmitted, sent, shared, saved, [or] received" by "any .

. . [State] official, staff, agent, or employee working within, under or located at the [Bureau of

Near Eastern Affairs]" that "referenc[e] or regard[] in any way" thirty different search terms.  *Id*.

at 5-8.  Part 4 of the request seeks "approximately 64,000 e-mail records from Brock Johnson's

unclassified e-mail account during his time as an employee at the Department of State."  Order at

1, ECF No. 31; *see also* Joint Status Report at 3, ECF No. 20.  Part 5 requests "[a]ll records,

communication or briefings created, generated, forwarded, transmitted, sent, shared, saved,

received, or reviewed by any State Department official, employee, staff or agent" that reference

options, proposals, employment offers, or other such opportunities sent to Brock Johnson or "any

organization, corporation, or other entity, as to which [he] has any interest or association."  Am.

Compl. Ex. A at 8-9.  Finally, Part 6 seeks "[a]ll records, communication or briefings created,

generated, forwarded, transmitted, sent, shared, saved, received, or reviewed by any State

Department official, employee, staff or agent" that reference Brock Johnson and "[m]oney, bank

accounts, transfers, funds, U.S. dollars, USD, Haitian Gourde, HTG, or any other currency."  *Id*.

at 9.  In a letter dated August 18, 2016, State acknowledged receipt of Plaintiff's FOIA request,

provided a case control number, and informed Plaintiff of its determination that the FOIA

request warranted expedited processing.  Am. Compl. Ex. B.

On October 5, 2016, Plaintiff filed the instant action, which was assigned to Judge Sullivan.  ECF No. 1.  Plaintiff's first claim alleged a violation of the FOIA and sought the production of records responsive to its request.  Compl. ¶¶ 22–39.  Plaintiff's second claim alleged that State had a policy or practice of not complying with 5 U.S.C. § 552(a)(6)(A) and sought equitable relief under *Payne Enterprises*.  *Id*. ¶ 48.  Specifically, Plaintiff alleged that State has a "practice, policy, and pattern of not responding as required by the clear requirements of 5 U.S.C. § 552(a)(6)(A)," *id*., which requires agencies to determine within twenty working days after receiving a FOIA request whether to comply with the request and notify the requestor of (1) the agency's determination and its reasons therefor, (2) the right of the requestor to seek assistance from the FOIA Public Liaison of the agency, and (3) certain information in the case of an adverse determination by the agency, *see* § 552(a)(6)(A).

On February 23, 2017, State filed a partial motion for judgment on the pleadings, seeking dismissal of Plaintiff's policy-or-practice claim.  ECF No. 15.  In that motion, State contended that Plaintiff failed to allege sufficient facts to plausibly demonstrate that State had adopted any such policy or practice regarding the FOIA's twenty-day deadline, and that, in any event, even if Plaintiff had proffered sufficient allegations, none of the policies or practices posited by Plaintiff constitutes the type of egregious, intentional agency action that is cognizable under *Payne Enterprises*.  Def.'s Mem. of Law in Support of Its Partial Mot. for J. on the Pleadings at 1-2.

After that motion was fully briefed, Plaintiff moved to amend its complaint.  ECF No. 21.  Judge Sullivan granted Plaintiff's motion and denied State's motion without prejudice as moot.  *See* Minute Order dated May 2, 2017.  Plaintiff filed its Amended Complaint on May 3, 2017, in which it again asserts a FOIA claim for the production of records and a policy-or-practice claim under *Payne Enterprises*.  Am. Compl. ¶¶ 61–89.  Unlike in Plaintiff's original Complaint, the

policy-or-practice claim in Plaintiff's Amended Complaint contends that State "has adopted and is engaged in a policy and practice of . . . intentionally refusing to issue a determination, produce documents and/or respond in any manner required under 5 U.S.C. § 552(a)(6) unless and until Plaintiff files suit." *Id*. ¶ 78.

State moved to dismiss Plaintiff's policy-or-practice claim, arguing that Plaintiff still failed to allege sufficient facts to plausibly demonstrate that State has any such policy or practice of intentional refusal to comply with the FOIA, noting that Plaintiff's allegations are more plausibly explained by delays arising from a lack of resources at State.  Def.'s Partial Mot. to Dismiss, or in the Alternative, Stay Proceedings on Count Two of the Am. Compl. at 1.  State also argued that the purported pattern or practice asserted by Plaintiff does not constitute the type of wholly unjustified agency conduct that is cognizable under *Payne Enterprises*.  *Id*. at 1-2.

On November 2, 2017, this case was reassigned to this Court.  On February 8, 2018, noting that "another judge in this district ha[d] already upheld the sufficiency of substantially identical allegations," the Court denied State's partial motion to dismiss "for the same reasons" given by Judge Boasberg in a Memorandum Opinion filed in *American Center for Law & Justice v. Dep't of State*, No. 16-cv-2516, on June 8, 2017, noting that there was "no need to reinvent the wheel."  Order at 1-2, ECF No. 48.  As State did in that case, State now moves for summary judgment on Plaintiff's policy-or-practice claim.

## STANDARD OF REVIEW

"Most FOIA cases are appropriately resolved on motions for summary judgment." *Gilliam v. U.S. Dep't of Justice*, 128 F. Supp. 3d 134, 138 (D.D.C. 2015) (citing *Brayton v. Office of the U.S. Trade Rep.*, 641 F.3d 521, 527 (D.C. Cir. 2011)).  Summary judgment is warranted "if the movant shows that there is no genuine dispute as to any material fact and the

movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "A fact is 'material' if it is capable of affecting the substantive outcome of the litigation." *Bartko v. U.S. Dep't of Justice*, 167 F. Supp. 3d 55, 61 (D.D.C. 2016) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986)). A dispute is "genuine . . . if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Liberty Lobby*, 477 U.S. at 248. In responding to the motion, the nonmovant attempting to show that a fact is genuinely disputed must "cit[e] to particular parts of materials in the record," *i.e.* evidentiary submissions, or show that the materials cited by the movant "do not establish the absence . . . of a genuine dispute." Fed. R. Civ. P. 56(c)(1).

A court may award summary judgment in a FOIA action solely on the basis of information provided by the agency through declarations when they are "not controverted by either contrary evidence in the record nor by evidence of agency bad faith." *Bartko*, 167 F. Supp. 3d at 62 (quoting *Larson v. Dep't of State*, 565 F.3d 857, 862 (D.C. Cir. 2009)). This is because "[s]uch affidavits or declarations 'are accorded a presumption of good faith, which cannot be rebutted by purely speculative claims about the existence and discoverability of other documents.'" *Id.* (quoting *SafeCard Servs., Inc. v. SEC*, 926 F.2d 1197, 1200 (D.C. Cir. 1991)). Although Plaintiff has not conducted any discovery in this case, discovery in FOIA cases is "both rare and disfavored." *Freedom Watch v. Bureau of Land Mgmt.*, 220 F. Supp. 3d 65, 68 (D.D.C. 2016) (citation omitted). Discovery is not permitted when it would only "afford the plaintiff an opportunity to pursue a bare hope of falling upon something that might impugn the affidavits" submitted by the government. *Ocasio v. Dep't of Justice*, 67 F. Supp. 3d 438, 440 n.6 (D.D.C. 2014) (citation omitted); *see also ACLJ II*, 2018 WL 623827, at *2 (granting summary judgment on ACLJ's policy-or-practice claim even though ACLJ had taken no discovery on the

claim, and concluding that ACLJ was not entitled to relief under Rule 56(d)); *Pietrangelo v. U.S. Army*, 334 F. App'x 358, 360 (2d Cir. 2009) (unpublished op.) (affirming district court's grant of summary judgment dismissing a policy or practice claim and affirming the court's denial of a motion for discovery on that claim where the agency produced adequate affidavits and the plaintiff "did not make an adequate showing of bad faith" "sufficient to impugn" the affidavits).

## ARGUMENT

Plaintiff bases its claim to equitable relief in Count II on an alleged policy or practice by State of "intentionally refusing to issue a determination, produce documents and/or respond in any manner required under 5 U.S.C. § 552(a)(6) unless and until Plaintiff files suit," as allegedly evidenced by State's delayed responses to other FOIA requests submitted by Plaintiff.  Am. Compl. ¶¶ 25-44, 78.  As Judge Boasberg concluded in considering nearly identical allegations and summary judgment evidence, however, State has no such policy or practice.  Indeed, as explained in the attached declaration from Eric Stein, State's policy is "to fully comply with the FOIA and to continue improving its FOIA operations."  Ex. A, Declaration of Eric F. Stein ¶ 7 ("Stein Decl.").  The summary judgment evidence further shows that there is no genuine issue of material fact that ACLJ's allegations regarding the manner in which State carries out this purported policy are without foundation.  The Court should therefore grant summary judgment to State on Plaintiff's policy-or-practice claim.

## I.     FOIA Policy-or-Practice Claims for Equitable Relief Are Confined to Cases Where Agencies Egregiously Adhere to an Improper Policy or Practice.

A federal court's jurisdiction under the FOIA "is dependent upon a showing that an agency has (1) 'improperly'; (2) 'withheld'; (3) 'agency records.'"  *Kissinger v. Reporters Comm. for Freedom of the Press*, 445 U.S. 136, 150 (1980) (quoting 5 U.S.C. § 552(a)(4)(B)).  A FOIA case therefore normally becomes moot when an agency produces the records the

plaintiff requested.  *See, e.g.*, *Perry v. Block*, 684 F.2d 121, 125 (D.C. Cir. 1982) (per curiam).

Plaintiff seeks to rely on a narrow exception to these general mootness principles that was

recognized in *Payne Enterprises*.  In that case, the court concluded that prospective relief may be

available under the FOIA where an improper "agency policy or practice will impair [a] party's

lawful access to information in the future," even if disputes about particular requests have been

resolved.  *Payne Enters.*, 837 F.2d at 491 (emphasis omitted).

 In *Payne Enterprises*, Air Force officers had repeatedly denied the plaintiff's FOIA

requests, "perfunctorily" invoking inapplicable exemptions on the apparent belief that the Air

Force might have to pay higher prices to contractors if it produced the information.  *Id.* at 487.

The officers continued to deny the requests even though the Secretary of the Air Force uniformly

reversed their determinations and ordered them to produce the documents.  *Id.* at 489-90; *see*

*also id.* at 489 (noting that the Secretary had advised the officers that their position was "wholly

unjustified").  The D.C. Circuit concluded that the Air Force's persistent refusal to end an

unjustified practice was "sufficiently outrageous" to warrant the fashioning of equitable relief.

*Id.* at 494; *see also id.* at 488, 491 n.8 (finding that the Air Force had committed multiple "clear

violations of the FOIA" that arose from a "concerted policy"); *id.* at 495 (instructing the district

court to consider whether injunctive relief was needed to prevent recurrence of the Air Force's

"illicit practice").[1]

---

[1] Similarly, in *Long v. IRS*, 693 F.2d 907 (9th Cir. 1982), the IRS was involved in a near-decade-long series of disputes with the plaintiffs regarding FOIA requests.  Although the IRS conceded that the requested records were not exempt from disclosure under the FOIA, IRS only "voluntarily" released documents after the plaintiffs filed lawsuits seeking them, mooting the cases but making clear that it retained the right to claim in the future that similar documents were exempt from production.  *Id.* at 908, 910.  The court concluded that this "abuse" of FOIA's administrative scheme could warrant injunctive relief.  *Id.* at 910.

The D.C. Circuit has since made clear that the availability of injunctive relief under *Payne Enterprises* is limited, and that "only a rare instance of agency delinquency in meeting its duties . . . will warrant a prospective injunction with an affirmative duty to disclose subject records to a plaintiff." *Citizens for Responsibility & Ethics in Wash. v. U.S. Dep't of Justice* ("*CREW II*"), 846 F.3d 1235, 1246 (D.C. Cir. 2017).  In those rare instances, the district court must make "necessary finding[s]" in order "to support the issuance of injunctive relief." *Ctr. for the Study of Servs. v. United States Dep't of Health & Human Servs.*, 874 F.3d 287, 292 (D.C. Cir. 2017).  First, the district court must find that the agency has adhered to an impermissible policy or practice.  *See, e.g.*, *id*. (noting that "[t]he district court made no finding that the agency was adhering to a policy or practice that it acknowledged as impermissible"); *see also Competitive Enter. Inst. v. United States Envtl. Prot. Agency*, 153 F. Supp. 3d 376, 386 (D.D.C. 2016) (noting that *Payne Enterprises* "was premised on . . . an uncontested finding of illegal conduct"); *cf. Cause of Action Inst. v. Eggleston*, 224 F. Supp. 3d 63, 71 (D.D.C. 2016) (at the motion to dismiss stage, a plaintiff must allege "facts establishing that the agency has adopted, endorsed, or implemented some policy or practice that constitutes an ongoing failure to abide by the terms of the FOIA" (quoting *Muttitt v. Dep't of State*, 926 F. Supp. 2d 284, 293 (D.D.C. 2013))).

Second, the district court must find that the agency's conduct is likely "to impair [the requester's] lawful access to the information in the future" by, for example, invoking a FOIA exemption "solely for purposes of delay" or relying on an exemption that is "frivolous on its face." *Ctr. For the Study of Servs.*, 874 F.3d at 287; *see also Competitive Enter. Inst.*, 153 F. Supp. 3d at 386 (noting that *Payne Enterprises* found "strong evidence of a risk of ongoing wrongdoing" and dismissing the complaint where the plaintiff identified "[nothing] in the record

that would give rise to a *Payne Enterprises* concern about the existence of an illegal practice that would impair plaintiff's access to records in the future"). The conduct at issue must be "*wholly unjustified*." *Cause of Action Inst*., 224 F. Supp. 3d at 74; *see also ACLJ II*, 2018 WL 623827, at *3 (holding that a policy-or-practice claim requires agency conduct that is "sufficiently outrageous").

Accordingly, agency delay, in and of itself, in responding to FOIA requests—even repeated delay—is insufficient to establish a viable policy-or-practice claim. *ACLJ II*, 2018 WL 623827, at *3. Rather, delay "only becomes actionable when some policy or practice also undergirds it." *Id*. (quoting *Muttitt*, 926 F. Supp. 2d at 293). In other words, a plaintiff must "show that the agency's actions are 'done to delay requests.'" *Id*. (quoting *Cause of Action Inst*., 224 F. Supp. 3d at 71-72); *see also Judicial Watch, Inc. v. U.S. Dep't of Homeland Security*, 211 F. Supp. 3d 143, 147 (D.D.C. 2016), *appeal filed*, No. 16-5339 (D.C. Cir.) (noting that a plaintiff "cannot rest on the mere fact of delay alone to establish a claim").

## II.     There Is No Evidence That State Has a Policy or Practice of Intentionally Refusing to Respond to FOIA Requests Until Requesters File Suit.

Plaintiff's theory is one of delay. It claims that State has a policy or practice of intentionally refusing to respond to FOIA requests unless and until requesters file lawsuits. Am. Compl. ¶ 78. But the summary judgment evidence is uncontroverted that State has no such policy or practice of intentional delay.

As described in the attached declaration from Mr. Stein, State has no practice or policy of intentionally violating the FOIA, whether in refusing to produce documents in response to a FOIA request until the requester initiates litigation or for any other reason. Stein Decl. ¶¶ 8-10. And Mr. Stein would know if such a practice or policy existed: he is the Director of Information Programs and Services ("IPS") at State, making him the "Department official immediately

10

responsible for responding to requests for records under the [FOIA]."  *Id*. ¶ 3; *see also id*. ¶ 5 ("I am familiar with all of [State's] policies and practices, both formal and informal, concerning responses to FOIA requests.").

Rather, State's policy is "to fully comply with the FOIA."  *Id*. ¶ 7.  For example, State resolves *thousands* of FOIA requests on an annual basis without the requestor needing to file suit, including thousands in which State grants or partially grants the request.  *See id*. ¶ 23 ("Despite its substantial FOIA litigation burden, the Department regularly resolves FOIA requests without litigation."); *see also, e.g.*, *id*. ¶¶ 24-26; Ex. B, U.S. Dep't of State, FOIA Annual Report Fiscal Year 2017 at Part V.B.(1); Ex. C U.S. Dep't of State, FOIA Annual Report Fiscal Year 2016 at Part V.B.(1).  This evidence alone serves to disprove the existence of any policy or practice along the lines of what Plaintiff alleges.  State clearly has no practice of refusing to produce non-exempt, responsive records until a FOIA requestor files suit.  Rather, the opposite is true—records are produced in response to thousands of requests each year, in the absence of any litigation on the part of the requestor.

Additionally, State has undertaken a concerted effort to reduce its FOIA backlog,[2] which had grown substantially in past years due to a massive increase in FOIA requests submitted to State and resultant FOIA litigation obligations.  Stein Decl. ¶¶ 16, 19, 21.  These efforts have been productive, as State's backlog has shrunk from 28,505 requests at the beginning of Fiscal Year ("FY") 2016, *id*. ¶ 16, to its current state of just over 10,400 requests, *id*. ¶ 27—a reduction of over 63%.  State achieved this substantial reduction in its backlog by implementing short term solutions, such as adopting new processes designed to improve its FOIA review, while also

---

[2] The "backlog" is defined as the "number of perfected requests or administrative appeals that are pending at an agency at the end of the fiscal year that are beyond the statutory time period for a response."  Ex. B, FOIA Annual Report FY 2017 at Part III, ¶ 2.c.

working on longer term solutions.  *Id.* ¶ 18.  Given that FOIA litigation is a lengthy process, and that State is a party to approximately 129 FOIA lawsuits at the moment, *id.* ¶ 19, this backlog reduction would be impossible if, as Plaintiff alleges, State had an actual practice or policy of refusing to comply with the FOIA in the absence of litigation.

Mr. Stein's declaration further shows that any delays that might have occurred in responding to Plaintiff's FOIA requests (*see* Am. Compl. ¶¶ 25-44) occurred as a result of State's substantial FOIA caseload and backlog, and "its limited resources in managing that caseload, including the high FOIA litigation demands facing [State]."  Stein Decl. ¶ 14; *see also id.* ¶¶ 15-16 (discussing the burdens on State's FOIA resources, increasing request volume, and queue of FOIA litigation cases); *ACLJ II*, 2018 WL 623827, at *7 (concluding that "State's disavowal of any litigation-forcing policy is . . . supported by hard data corroborating its claim that it must handle immense FOIA obligations with limited resources").  Between fiscal year 2008 and fiscal year 2016, State saw a 350% increase in the annual number of FOIA and Privacy Act requests it received, straining State's already-burdened FOIA resources and resulting in an increase in State's FOIA backlog.  *Id.* ¶ 16.  This corresponded with an increase in the number of FOIA litigation cases.  *Id.* ¶ 15.  These cases represent only around 1% of all FOIA requests submitted to State, but nonetheless consume a disproportionate share—approximately 70-80%— of IPS's FOIA review resources.  *Id.* ¶ 19; Ex. D, U.S. Dep't of State, Chief FOIA Officer Annual Report, Mar. 2018, at 1-2.  These circumstances result in delays between the time when a FOIA requestor, like Plaintiff, submits a request, and the time when responsive, non-exempt records can be produced, Stein Decl. ¶ 16—a point that Judge Boasberg acknowledged.  *See ACLJ II*, 2018 WL 623827, at *4 (noting that "[FOIA] litigation—such as the five suits brought by ACLJ—only exacerbates delays").

This situation can lead to a vicious cycle.  Faced with a sizable FOIA backlog, which State has reduced and is still working to reduce further, State is unable to provide a determination in response to many requests within FOIA's twenty-day timeframe, which results in requesters having the opportunity to bring suit.  *See* Ex. D, U.S. Dep't of State, Chief FOIA Officer Annual Report, Mar. 2018, at 2 ("With so many resources being committed to processing FOIA litigation cases, it had been challenging to respond quickly to other FOIA requests which are at risk of becoming FOIA litigation cases if not processed in a timely manner.").  As a practical matter given litigation-imposed deadlines, those suits wind up jumping to the front of the line in State's FOIA processing queue and often require additional resources to be allocated to them.  Ex. E, U.S. Dep't of State, Chief FOIA Officer Annual Report, Mar. 2017, at 13 ("A/GIS/IPS set clear priorities for IPS employees to process expedited and litigation cases as top priorities . . . .").  This further diverts resources from State's *non*-litigation FOIA caseload, causing the cycle to continue.  *Stein Decl.* ¶ 16 (noting that "[t]he demands of FOIA litigation exacerbate[s] the non-litigation request backlog," which "increase[s] the risk of future litigation").

Accordingly, there is no evidence to support—and, accordingly, no genuine issue of material fact regarding—Plaintiff's policy-or-practice claim based on intentional delay.  *See ACLJ II*, 2018 WL 623827, at *3 ("Reviewing the undisputed record, the Court finds no evidence that State has any policy, formal or otherwise, of forcing requesters to file suit before releasing material."); *see also Judicial Watch*, 211 F. Supp. 3d at 146 (allegations of delay are

insufficient when such "inevitable but unintended delay [could be] attributable to a lack of resources").[3]

### III.   The Evidence Regarding State's FOIA Resources and Training Disproves Plaintiff's Policy-or-Practice Allegations.

Nor is there any evidence to support Plaintiff's allegations regarding the means by which State supposedly carries out the alleged policy or practice.  Plaintiff contends that State engages in a policy or practice of FOIA noncompliance by refusing to obtain or allocate sufficient resources to meet its FOIA obligations and improperly training its FOIA staff.  Am. Compl. ¶¶ 47-48, 51-52, 57-58.  In support of these allegations, Plaintiff primarily points to an Office of Inspector General report from January 2016 detailing recommendations for improvements in State's FOIA processes.  *Id.* ¶¶ 48-58.  The evidence undisputedly shows, however, that State is working to strengthen its FOIA operations in all of the areas alleged in the Amended Complaint, disproving Plaintiff's suggestion that State's FOIA practices demonstrate an intentional policy of noncompliance.

**A.    Resources.**    State's approach in recent years to the funding and staffing of its FOIA operations contradicts Plaintiff's narrative of an agency reducing the amount of resources allocated to those operations, as well as Plaintiff's reliance on the January 2016 Office of Inspector General report.  Indeed, State increased its budget allocated for FOIA activities— including personnel and other costs associated with processing FOIA requests—in fiscal year 2017, which was almost double what was spent in fiscal year 2016.  *Id.* ¶ 28.  Additionally, State

---

[3] Plaintiff claims that State began producing non-exempt, responsive records in response to its other FOIA requests after it filed suit.  *See* Am. Compl. ¶¶ 26-30.  But this results from the fact that "[p]rioritizing litigation cases . . . [is] part of the statutory scheme" under the FOIA, *ACLJ II*, 2018 WL 623827, at *4, and not from any improper, litigation-forcing policy or practice.  *See Daily Caller v. U.S. Dep't of State*, 152 F. Supp. 3d 1, 8 (D.D.C. 2015) (noting that FOIA requests in litigation are prioritized over other requests).

plans to dedicate additional funds to the acquisition of new technology that will further support and improve State's FOIA program.  *Id.* ¶ 29.  Thus, contrary to Plaintiff's suggestions, State has no intentional policy or practice of understaffing or underfunding its FOIA operations.  *Id.* ¶ 12.

Consequently, for these and other reasons, Judge Boasberg concluded that "the OIG report and recommendations actually cut against ACLJ," as "State has not despondently thrown up its hands and ignored the OIG's recommendations."  *ACLJ II*, 2018 WL 623827, at *6.  To the contrary, State "implemented several changes to its FOIA process over the past couple of years in an effort to reduce its backlog and respond in more timely fashion."  *Id.*  And "OIG has approved of these efforts and lauded State's 'success[es] in implementing its recommendations' in accordance with the 2016 OIG report."  *Id.* (quoting Office of Inspector General, U.S. Dep't of State, *Semiannual Report to the Congress, October 1, 2016, to March 31, 2017*, at 64, https://oig.state.gov/system/files/oig_spring_2017_sar_508.pdf).  Thus, as Judge Boasberg found, the Office of Inspector General report does not create any genuine issue of material fact as to whether State has an intentional policy or practice of noncompliance with the FOIA.

**B.    Training**.    State has also taken steps in recent years to improve the quality of its FOIA training programs.  Plaintiff points to a Department of Justice report that cites State's Chief FOIA Officer Annual Report from March 2016, which stated that roughly 10% of State's FOIA professionals had attended substantive FOIA training during the prior year.  Am. Compl. ¶ 47.  But things have changed significantly since then.  From March 2017 to March 2018, approximately 90% of State's FOIA professionals attended substantive FOIA training.  Stein Decl. ¶ 31; *see also* Ex. D, U.S. Dep't of State, Chief FOIA Officer Annual Report, Mar. 2018, at 4.  FOIA staff also attended briefings by the Department of Justice's Office of Information Policy and the National Archives and Records Administration's Office of Government and

Information Services.  Stein Decl. ¶ 31.  These trainings covered, *inter alia*, a general overview of the FOIA, a review of the recent amendments to the FOIA, overviews of the FOIA exemptions, and reminders about annual training requirements for classified and privacy information.  *Id.* ¶ 32.  State has also provided training to *non-*FOIA professionals regarding the agency's obligations under the FOIA.  Hundreds of employees have been through at least three different FOIA briefings, and State is developing a new online module, expected to be launched later this year, that will be part of the mandatory records and FOIA training for *all* State employees.  *Id.* ¶ 33.  Quite simply, these are not the behaviors of an agency attempting to stymie its own compliance with FOIA.

**C.    Initial Response Letters.**    Finally, Plaintiff references the response letters that State sends after receiving a FOIA request, which "acknowledg[e] receipt of [a] FOIA request and assign[] a control case number," but are allegedly "non-compliant" with the FOIA.  Am. Compl. ¶ 83.  As Judge Boasberg has explained, however, Plaintiff's allegation "holds no water."  *Am. Ctr. for Law & Justice v. United States Dep't of State* ("*ACLJ I*"), 249 F. Supp. 3d 275, 284 (D.D.C. 2017).  "FOIA requires that agencies provide tracking numbers for all requests that take over ten days and establish a point of contact if individuals wish to inquire about the request-receipt date or estimated response timeline."  *Id.*  That is what State's letters are designed to accomplish.  As Mr. Stein explains in his declaration, the letters are intended to provide requesters with information that may be of assistance to them during the FOIA review process, and to comply with State's obligations under FOIA.  Stein Decl. ¶ 13.  They are not intended in any way to mislead or fool requesters.  *See id.*

The letters on which Plaintiff relies, then, simply show State "do[ing] what the [FOIA] mandates."  *ACLJ I*, 249 F. Supp. 3d at 284.  They do not evince any intentional policy or

16

practice by State to contravene the FOIA.  Thus, because Plaintiff cannot show that "sending out receipt letters that <u>comply</u> with FOIA is somehow tantamount to <u>violating</u> the [FOIA] . . . its attack on this aspect of the agency-disclosure process falls flat."  *Id.*

## IV.     The Exercise of the Court's Equity Jurisdiction Is Not Warranted

An additional reason to grant Defendant summary judgment on Plaintiff's policy-or-practice claim is that the exercise of the Court's equity jurisdiction is not warranted here.  A district court possesses "broad discretionary power to withhold equitable relief as it reasonably sees fit."  *Massachusetts v. Microsoft Corp.*, 373 F.3d 1199, 1214 (D.C. Cir. 2004).  However, "only a rare instance of agency delinquency would warrant an injunction" in a policy-or-practice case.  *ACLJ I*, 249 F. Supp. 3d at 286 (quoting *CREW II*, 846 F.3d at 1246).  Indeed, the D.C. Circuit in *Payne Enterprises* remanded the requestor's policy-or-practice claim to the district court for consideration of whether injunctive relief was actually warranted under the circumstances in that case.  *See Payne Enters.*, 837 F.2d at 494-95.

Injunctive relief, in the form of a permanent injunction, is warranted where the plaintiff has shown "(1) that it has suffered an irreparable injury; (2) that remedies available at law, such as monetary damages, are inadequate to compensate for that injury; (3) that, considering the balance of hardships between the plaintiff and defendant, a remedy in equity is warranted; and (4) that the public interest would not be disserved by a permanent injunction."  *eBay Inc. v. MercExchange, L.L.C.*, 547 U.S. 388, 391 (2006).  Courts in equity retain the power of "sound discretion" in determining whether and how to fashion relief; indeed, "[f]lexibility rather than rigidity" is at the core of equity jurisdiction.  *Weinberger v. Romero-Barcelo*, 456 U.S. 305, 312 (1982) (citation omitted).

Similarly, when considering a request for declaratory relief, district courts have ample discretion and may consider "equitable, prudential, and policy arguments" in deciding whether to exercise their power. *Swish Mktg, Inc. v. FTC*, 669 F. Supp. 2d 72, 76 (D.D.C. 2009) (quoting *MedImmune, Inc. v. Genentech, Inc.*, 549 U.S. 118, 136 (2007) (construing the Declaratory Judgment Act)). Declaratory relief must operate as "an instrument of practical relief," and accordingly, is not warranted "where it does not serve a useful purpose." *Hanes Corp. v. Millard*, 531 F.2d 585, 591-92 (D.C. Cir. 1976), *superseded by statute as recognized in Nat'l R.R. Passenger Corp. v. Consol. Rail Corp.*, 892 F.2d 1066 (D.C. Cir. 1990).

In light of these guiding principles, the Court should exercise its equitable discretion and, even if it concludes that a genuine issue of material fact exists as to whether Plaintiff is entitled to injunctive relief on its policy-or-practice claim, decline to issue the relief requested—namely, a "[d]eclaration that Defendant has implemented an impermissible practice/policy of untimely and noncompliant responses to FOIA requests and an [o]rder enjoining Defendant from continuing to implement that practice/policy." Am. Compl. ¶ 90(e). Such relief is not warranted in this case where the evidence shows that State engages in no egregious agency conduct or wanton disregard either of its FOIA obligations or the rights of Plaintiff.

For multiple reasons, this is not an example of the type of "rare instance of agency delinquency" that would merit the issuance of injunctive relief. *ACLJ I*, 249 F. Supp. 3d at 286. First, the relief requested by Plaintiff is overbroad, as it seeks not relief specific to itself, but could arguably be read to request a permanent injunction barring State from continuing to implement a (nonexistent) policy or practice as to the general public. *See* Am. Compl. ¶ 90(e) (seeking relief not limited to ACLJ). However, the Court lacks the authority "to enjoin the government from engaging in a policy or practice of delayed disclosure writ large, but can only

18

order the agency to cease any actions *vis-à-vis* the plaintiffs in the lawsuit." *ACLJ I*, 249 F.

Supp. 3d at 286.

Second, the equitable relief requested by Plaintiff would serve no useful purpose.

Because State has no policy or practice of intentionally violating the FOIA, Plaintiff has an

adequate remedy at law for any alleged delays in the processing of its FOIA requests—namely,

the ability to bring a claim under the FOIA, like the one set forth in Count I of Plaintiff's

Amended Complaint, seeking the requested records.  Given this adequate remedy at law,

equitable relief is improper.  *See Richards v. Delta Air Lines, Inc.*, 453 F.3d 525, 531 n.6 (D.C.

Cir. 2006) ("The general rule is that injunctive relief will not issue when an adequate remedy at

law exists." (citation omitted)); *see also Rocky Mountain Wild v. U.S. Forest Serv.*, No. 15-cv-

0127, 2016 WL 362459, at *12 (D. Colo. Jan. 2, 2016) (noting that because the "FOIA already

requires agencies to make records 'promptly available,'" the injunctive relief requested by the

plaintiff "would [have been] little more than an injunction 'to obey the law, [which is] too vague

to satisfy [Federal Rule of Civil Procedure] 65(d)'").  Moreover, the summary judgment

evidence shows that State is actively working towards improving its FOIA operations, including

reduction of its FOIA backlog, which will reduce the amount of time that FOIA requesters must

wait to receive responses.  Given these circumstances, a declaration from the Court would not be

an "instrument of practical relief."  *Hanes*, 531 F.2d at 592.

Finally, the public interest would not be served by granting Plaintiff the injunctive relief

it seeks, as it would inure to the benefit of a single party— Plaintiff—while likely coming at the

expense of all other FOIA requesters submitting requests to State.  State's practice, outside of

litigation and expedited-processing contexts, is to process FOIA requests on a first-in, first-out

basis.  *See* Ex. E, U.S. Dep't of State, Chief FOIA Officer Annual Report, Mar. 2017, at 13; *see*

*also Daily Caller*, 152 F. Supp. at 1 ("In general, federal agencies process incoming FOIA requests on a first-in/first-out basis.").  Any relief that accords Plaintiff special treatment over the thousands of other requesters petitioning State for records would not serve the objectives of FOIA to "pierce the veil of administrative secrecy and [] open agency action to the light of public scrutiny."  *Dep't of the Air Force v. Rose*, 425 U.S. 352, 361 (1976) (citation omitted). Rather, it would elevate the requests of a single entity, despite the fact that other requesters are equally entitled under the FOIA to seek non-exempt records from State.

## CONCLUSION

For the foregoing reasons, State respectfully requests that the Court grant its Motion for Partial Summary Judgment and dismiss Count II of the Amended Complaint.


Dated:  May 3, 2018                              Respectfully submitted,

                                                CHAD A. READLER
                                                Acting Assistant Attorney General

                                                MARCIA BERMAN
                                                Assistant Director, Federal Programs Branch

                                                /s/ *Jason Lee*_____ ____
                                                JASON LEE (CA Bar No. 298140)
                                                Trial Attorney
                                                Federal Programs Branch
                                                U.S. Department of Justice, Civil Division
                                                Telephone:  (202) 514-3367
                                                Fax:  (202) 616-8470
                                                Email:  Jason.Lee3@usdoj.gov

                                                Mailing Address:
                                                Post Office Box 883
                                                Washington, DC 20044

                                                Courier Address:
                                                20 Massachusetts Ave., NW Rm. 7107
                                                Washington, DC 20001

*Counsel for Defendant*