**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| AMERICAN CENTER FOR LAW AND JUSTICE, | ) ) ) ) |
| Plaintiff, | ) ) |
| vs. | ) Case Action No. 16-cv-1975(TNM) ) |
| UNITED STATES DEPARTMENT OF STATE, | ) ) ) ) |
| Defendant. | ) ) |

**PLAINTIFF'S MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO DEFENDANT'S MOTION FOR PARTIAL SUMMARY JUDGMENT**

**TABLE OF CONTENTS**

TABLE OF AUTHORITIES ................................................................................................ ii

INTRODUCTION .............................................................................................................. 1

STATEMENT OF FACTS ................................................................................................. 1

ARGUMENT ...................................................................................................................... 3

    I.      State's Pre-Discovery Summary Judgment Motion is Premature ................................. 3

    II.     State's Declaration Consisting of Self-Serving and Conclusory Opinions Is Insufficient to Establish The Undisputed Material Facts Necessary to Support Its Motion for Summary Judgment ................................................................................... 5

    III.    State Fails to Demonstrate Through Undisputed Facts The Absence of a Pattern or Practice as to Plaintiff ................................................................................................ 5

    IV.    Even If The Undisputed Facts Demonstrated A Pattern of Nothing More Than Incessant Delay, Such Conduct is Sufficient to Warrant Injunctive Relief .................. 9

CONCLUSION ................................................................................................................ 16

## **TABLE OF AUTHORITIES**

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242 (1986) ................................................................3

*American Center for Law and Justice v. Dep't of State*,
    289 F. Supp. 3d 81 (D.D.C. 2018) ........................................................4, 8, 12, 13, 14, 15

*Better Gov't Ass'n v. Dep't of State*, 780 F.2d 86 (D.C. Cir. 1986) ................................................6

*Cause of Action Inst. v. Eggleston*, 224 F. Supp. 3d 63 (D.D.C. 2016) ....................................6, 13

*Celotex Corp. v. Catrett*, 477 U.S. 317 (1986) ..............................................................................5

*Citizens for Responsibility & Ethics in Wash. v. FEC*, 711 F.3d 180 (D.C. Cir. 2013) ................14

*Citizens for Responsibility & Ethics in Wash. v. Dep't of Justice*,
    WL 1518964 (D.D.C. June 1, 2006) .....................................................................................4

*Convertino v. Dep't of Justice*, 684 F.3d 93, 99 (D.C. Cir. 2012) ..................................................3

*Electronic Privacy Info Ctr., v. U.S. Dep't of Justice*,
    416 F. Supp. 2d 30 (D.D.C. 2006) ......................................................................................11

*Evans v. Technologies Applications & Service Co.*, 80 F.3d 954 (4th Cir. 1996) ..........................5

*Feinman v. FBI*, 713 F. Supp. 2d 70 (D.D.C. 2010) .....................................................................13

*Garcia v. Vilsack*, 563 F.3d 519 (D.C. Cir. 2009) ........................................................................13

*Gilmore v. Dep't of Energy*, 4 F. Supp. 2d 912 (N.D. Cal. 1998) ..................................................4

*Gilmore v. Dep't of Energy*, 33 F. Supp. 2d 1184 (N.D. Cal. 1998) ............................................12

*Information Network for Responsible Mining v. U.S. Bureau of Land Mgmt.*,
    611 F. Supp. 2d 1178 (D. Colo. 2009) ................................................................................12

*Judicial Watch, Inc. v. Dep't of Homeland Sec.*, 211 F. Supp. 3d 143 (D.D.C. 2016),
    *appeal filed* Case No. 16-5339 (D.C. Cir.) .......................................................12, 13, 14, 15

*Long v. Dep't of Justice*, 450 F. Supp. 2d 42 (D.D.C. 2006) ....................................................5, 11

*Mayock v. INS*, 714 F. Supp. 1558 (N.D. Cal. 1989) ....................................................................10

*Morley v. CIA*, 508 F.3d 1108, 1114 (D.C. Cir. 2007) .................................................................14

*Muttitt*, *v. U.S. Central Command*, 813 F. Supp. 2d 221 (D.D.C. 2011)....................6, 7, 8, 11, 13

*Newport Aeronautical Sales v. Dep't of the Air Force*, 684 F.3d 160 (D.C. Cir. 2012) ...........5, 12

*Nat'l Sec. Counselors v. CIA*, 898 F. Supp. 2d 233 (D.D.C. 2012).........................1, 6, 11, 13, 14

*NLRB v. Robbins Tire & Rubber Co.*, 437 U.S. 214 (1978).............................................................1

*Nulankeyutmonen Nkihtaqmikon v. BIA*, 672 F. Supp. 2d 154 (D. Me 2009)...............................11

*Oregon Natural Desert Ass'n v. Gutierrez*, 409 F. Supp. 2d 1237 (D. Or. 2006).........................12

*Our Children's Earth Found. v. Nat'l Marine Fisheries Serv.*,
    2015 U.S. Dist. LEXIS 94997 (N.D. Cal. 2015) ...............................................................10

*Payne Enterprises, Inc. v. United States*,
    837 F.2d 486 (D.C. Cir. 1988)........................................5, 6, 7, 8, 9, 10, 11, 12, 13, 14, 15

*Safecard Servs., Inc. v. SEC*, 926 F.2d 1197 (D.C. Cir. 1991) ........................................................5

*SEIU Nat'l Indus. Pension Fund v. Castle Hill Health Care Providers, LLC*,
    312 F.R.D. 678 (D.D.C. 2015).............................................................................................3

*S. Yuba River Citizens League v. Nat'l Marine Fisheries Serv.*,
    2008 U.S. Dist. LEXIS 107177(E.D. Cal. June 20, 2008).................................................10

*Weisberg v. Dep't of Justice*, 705 F.2d 1344 (D.C. Cir. 1983).......................................................14

Fed. R. Civ. P. 56(c) ..........................................................................................................................5

111 CONG. REC. 26821 (1965).........................................................................................................1

## INTRODUCTION

"[T]he purpose of FOIA is to ensure an informed citizenry, vital to the functioning of a democratic society, needed to check against corruption and to hold the governors accountable to the governed." *Nat'l Sec. Counselors v. CIA*, 898 F. Supp. 2d 233, 252 (D.D.C. 2012) (quoting *NLRB v. Robbins Tire & Rubber Co.*, 437 U.S. 214, 242 (1978)). "A popular government without popular information or the means of acquiring it is but a prolog to a farce or a tragedy or perhaps both." 111 CONG. REC. 26821 (1965) (quoting James Madison). In keeping with this principle, Plaintiff, American Center for Law and Justice (ACLJ), has attempted on several occasions to obtain information directly from the United States Department of State ("State"). Predictably, and in keeping with a pattern and practice outlined by Plaintiff in prior suits as well as the instant one, State has flouted its obligations under FOIA by failing to respond to a single one of ACLJ's twelve or more FOIA requests in the manner required by FOIA—unless and until Plaintiff files suit. Plaintiff's pattern and practice claim is not based on a mere theory, as State asserts; it is, instead, based on evidence which State cannot dispute.

As an agency subject to the FOIA, State is obligated not merely to improve its FOIA division, but to take all necessary steps to bring itself into compliance with the law's requirements. State has admittedly failed to do so and attempts to shift the blame for its repeated and long-time failures over the last five (5) years or more to Plaintiff and other FOIA requestors attempting to obtain information and ensure agency accountability to the citizenry.

## STATEMENT OF FACTS

As Plaintiff outlines in the Amended Complaint, State is engaged in a pattern and/or practice of violating FOIA by intentionally failing and/or refusing to respond to Plaintiff's FOIA requests, in a manner required by FOIA, unless and until Plaintiff files a lawsuit. *See* Plaintiff's

1

Statement of Additional Material Facts Precluding Summary Judgment (hereinafter "Pl. SAMF") at ¶¶ 53-57. Plaintiff alleges that this pattern and practice is ongoing. Plaintiff has issued more than twelve (12) FOIA requests to State, and with regard to every single request – regardless of the time given to State to respond – State failed to notify Plaintiff of its determination and the reasons therefor, within 20 days or anytime thereafter and State did not inform Plaintiff of any unusual circumstances requiring an extension of the 20-day time period, either within that time period or anytime thereafter leading up to the filing of the lawsuit. Pl. SAMF at ¶¶ 53-57. Regardless of whether State is given 1 month, or 1.4 years – *i.e.* up to 509 days (as opposed to just 20 days) – to issue a determination, or even simply provide an estimated date of determination, State fails to do so unless and until Plaintiff files suit. *Id.* at ¶ 56. State has also refused on more than one occasion to provide Plaintiff with an estimated/anticipated date of determination and/or release of documents, even where more than 509 days has passed since State received Plaintiff's FOIA request. *Id.* at ¶ 57. State has also refused to process Plaintiff's FOIA requests in an expedited manner where other federal agencies have deemed the same FOIA request to be entitled to expedited processing pursuant to substantially similar agency regulations. *Id.* at ¶ 67.

In January 2016, the Office of Inspector General ("OIG") issued a report entitled EVALUATION OF THE DEPARTMENT OF STATE'S FOIA PROCESSES FOR REQUESTS INVOLVING THE OFFICE OF THE SECRETARY ("OIG Report"), in which OIG referenced a prior OIG Report from 2012 identifying numerous deficiencies within the State Department in responding to FOIA requests in a timely and lawful manner, including: understaffing of employees assigned to processing FOIA requests, inconsistent monitoring and oversight by management, insufficient training of FOIA staff/employees, and inaccurate and incomplete searches. *Id.*, at ¶ 59. The report also found that State had failed to comply with many of OIG's recommendations from 2012.

*Id.* at ¶ 62. For example, in 2012, the OIG noted the small number of staff devoted to processing Department-wide FOIA requests. *Id*. In 2016, despite these findings and a continuing increase in FOIA requests, the OIG found that "the Department has allocated fewer employees to handle them." *Id.* at. ¶ 62-63.

The OIG Report also found that State does not have "rules . . . requir[ing] staff to notify requesters when processing is delayed, even though it is mandated by law." *Id*. at ¶ 61. At the beginning of 2016, the OIG reported that State's delays in responding to FOIA requests are due, in part, to the Department's insufficient provision of personnel to IPS to handle its caseload." *Id*. at ¶ 64. The OIG Report indicated that State would need to include 52 additional positions and that until such time as all 52 positions were filled, OIG would not consider the recommendation resolved. *Id.* at ¶ 68.

In 2015, the average response time for State to respond to FOIA requests was as follows: 113 days for simple requests, 511 days for complex requests and 102 days for expedited requests. *Id.* at ¶ 58. In 2016, the average response time for State to respond was as follows: 342 days for simple requests, 517 days for complex requests and 135 for expedited requests. *Id*. at ¶ 65. In 2017, the average has again increased to 391 days for simple requests, 652 days for complex requests and 416 days for expedited requests. *Id*. at ¶ 66.

## ARGUMENT

**I.     State's Pre-Discovery Summary Judgment Motion is Premature.**

State's partial summary judgment motion, filed prior to any discovery, conflicts with precedent in this Circuit disfavoring pre-discovery summary judgment motions. *See SEIU Nat'l Indus. Pension Fund v. Castle Hill Health Care Providers*, LLC, 312 F.R.D. 678, 683-84 (D.D.C. 2015) (citing *Convertino v. Dep't of Justice*, 684 F.3d 93, 99 (D.C. Cir. 2012) (citing *Anderson v.*

3

*Liberty Lobby, Inc.*, 477 U.S. 242, 257 (1986)) ("[P]re-discovery summary judgment motions are premature unless all parties have had a full and fair opportunity for discovery."). This case is no exception. Indeed, as one court made clear, "discovery is necessary and should be taken" in a FOIA case involving a pattern and practice claim. *Gilmore v. Dep't of Energy*, 4 F. Supp. 2d 912, 926 (N.D. Cal. 1998) (granting Plaintiff's Rule 56 discovery request based on a declaration attesting that discovery on a variety of matters relating to the defendant's processing of FOIA requests was needed and ordering that discovery commence prior to a decision on the defendant's motion for summary judgment). To be sure, courts have, time and again, rejected the notion that discovery is never appropriate in FOIA cases. *American Center for Law and Justice v. Dep't of State*, 289 F. Supp. 3d 81, 92 (D.D.C. 2018) (hereinafter "*ACLJ II*"). This is especially true where, as here, persistent and unexplained delays in processing Plaintiff's FOIA requests raise substantial questions regarding the government's actions in relation to Plaintiff and its numerous FOIA requests. *See Citizens for Responsibility & Ethics in Wash. v. Dep't of Justice*, WL 1518964, at *2-3 (D.D.C. June 1, 2006) (permitting limited discovery following briefing and a motions hearing when there still remained unanswered questions).

State's motion is supported by bare assertions of fact and conclusory statements regarding its current policies and practices. Plaintiff is unable to dispute State's assertions regarding its policies and practices without proper discovery in this matter. *See* Plaintiff's Resp. to Def.'s Statement of Undisputed Facts (hereinafter "Pl. Resp. to Def. SUMF"), and Plaintiff's Motion under Federal Rule Civil Procedure 56(d) (both filed herewith). Accordingly, while this Court should deny State's motion outright, at a minimum it should grant Plaintiff's Rule 56(d) discovery request, as the Rule 56(d) Declaration amply demonstrates Plaintiff's need for discovery to properly oppose State's motion for summary judgment.

4

II. **State's Declaration, Consisting of Self-Serving and Conclusory Opinions, Is Insufficient to Establish the Undisputed Material Facts Necessary to Support Its Motion for Summary Judgment.**

A court may grant a motion for summary judgment if the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits or declarations, show that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); Fed. R. Civ. P. 56(c). Affidavits submitted in support of a motion for summary judgment and consisting of "conclusory statements or self-serving opinions without objective corroboration" are insufficient. *Evans v. Technologies Applications & Service Co.*, 80 F.3d 954, 962 (4th Cir. 1996). *See also Long v. Dep't of Justice*, 450 F. Supp. 2d 42, 53-54 (D.D.C. 2006) (quoting *Safecard Servs., Inc. v. SEC*, 926 F.2d 1197, 1200 (D.C. Cir. 1991) ("Agency affidavits or declarations must be 'relatively detailed and non-conclusory.'"). State attempts to rely on several conclusory and self-serving opinions to support its motion for summary judgment. These should be stricken from the record. *See Evans*, 80 F.3d at 962 (affirming that a district court does not abuse its discretion for striking such opinions and conclusory statements from the record).

III. **State Fails to Demonstrate Through Undisputed Facts The Absence of a Pattern or Practice as to Plaintiff.**

A pattern or practice claim is "premised on the existence of 'an agency policy or practice [that] will impair [a] party's lawful access to information in the future.'" *Payne Enterprises, Inc. v. United States*, 837 F.2d 486, 491 (D.C. Cir. 1988). *See also, Newport Aeronautical Sales v. Dep't of the Air Force*, 684 F.3d 160, 164 (D.C. Cir. 2012). To prevail on a pattern or practice claim, a plaintiff must demonstrate that (1) the agency in question has adopted, endorsed, or implemented a policy or practice that constitutes an ongoing "failure to abide by the terms of the FOIA"; and (2) the plaintiff will "suffer 'continuing injury due to this practice.'" *Nat'l Sec.*

5

*Counselors*, 898 F. Supp. 2d at 253 (quoting *Better Gov't Ass'n v. Dep't of State*, 780 F.2d 86, 91 (D.C. Cir. 1986)). There is no requirement that the conduct be "wholly unjustified." Def. MPSJ, at 10 (citing *Cause of Action Inst. v. Eggleston*, 224 F. Supp. 3d 63, 74 (D.D.C. 2016) (quoting *Payne*, 837 F.2d at 489) (simply stating that the officer's reasoning for refusal to release a bid abstract was "wholly unjustified," not that such a finding is a prerequisite for a *Payne* action). Nor is there any requirement that Plaintiff identify a formal policy. Indeed, this court has rejected such an argument. *See Muttitt v. U.S. Central Command*, 813 F. Supp. 2d 221, 224, 230-231 (D.D.C. 2011) (rejecting State Department's argument that plaintiff's claim should fail because it did not point to any particular regulation, guidance or policy statement). The *Payne* court was clear: a plaintiff need not demonstrate a formal policy or one articulated in regulations in order to state an adequate claim. 837 F.2d at 491 ("The fact that the practice at issue is informal, rather than articulated in regulations or an official statement of policy is irrelevant" so long as the agency's conduct is not merely an isolated mistake.).

In the instant case, State avers that it does not have a department-wide policy or practice of refusing to respond to FOIA requests until after litigation is initiated. State fails, however, to address—much less refute with undisputed facts—that such a practice, among other unlawful practices detailed below, indeed exists *as to Plaintiff* and every single FOIA request it has received from Plaintiff.[1]

---

[1] State has made its best effort to demonstrate that its FOIA department has no formal policy of intentionally or willfully delaying the issuance of determinations and/or release of documents to all FOIA requestors. As Plaintiff explains below, *see* Part IV, such a contention remains disputed and ignores the evidence that State is engaged in a pattern and practice of extreme, never-ending delay attributable only to State's own conduct in skirting its FOIA responsibilities for years. Regardless, Plaintiff need not demonstrate with undisputed facts that State maintains a formal or informal policy of delay and/or refusing to process FOIA requests as to all FOIA requestors. Rather, Plaintiff need only demonstrate that a disputed fact remains as to whether such a practice exists as to Plaintiff.

Plaintiff has issued more than twelve FOIA requests to State over the last two years. Of those twelve, Plaintiff has never received a response in a manner compliant with federal law – *i.e.* a determination and/or the production of responsive documents – unless and until Plaintiff files suit. Specifically, Plaintiff has filed suit on eight of its FOIA requests to compel State to issue a determination and/or produce documents. As to all other FOIA requests, State has failed to issue a determination, produce documents or respond in any manner required by FOIA. These requests have been pending anywhere between two months and 1.4 years – *i.e.* up to 509 days. With regard to the FOIA request pending for 509 days, State has also failed on two occasions to provide Plaintiff with a timeframe for the processing of the request, much less an estimated determination and/or release date. Once more, and on at least two occasions where Plaintiff has issued the same FOIA request to several governmental agencies, State has denied Plaintiff's request for expedited processing despite other agencies' express grant of expedited processing pursuant to substantially similar agency regulations.

These undisputed facts invalidate State's suggestion that all that is at issue here is mere delay, or that what Plaintiff has experienced over the past two years with regard to more than twelve FOIA requests is an "isolated mistake," *Payne*, 837 F.2d at 491. The court's decision against State in *Muttitt* is particularly instructive here. In *Muttitt*, the plaintiff alleged similar facts as in this case: plaintiff issued FOIA requests and the State and Treasury departments assigned each request a processing number, but never released any documents to the plaintiff. 813 F. Supp. 3d at 223-24. Plaintiff then issued inquiries on separate dates to both agencies seeking a tentative release date for documents on five FOIA requests. State informed plaintiff that it could not give a definitive timeframe for the processing of the FOIA requests. *Id.* at 224. The court held that plaintiff had stated a viable pattern and practice claim against State based on the multiple instances

7

in which State failed to provide an estimated completion date. *Id.* at 230-31 (explaining that, on the other hand, plaintiff's claim against Treasury must fail because it involved a single FOIA request). Notably, while State argued in *Muttitt* (as it does here) that several incidents of FOIA violations do not constitute a pattern or practice where there is no evidence of an underlying regulation or policy, the court disagreed, finding instead that State's multiple failures to provide Plaintiff with time estimates was sufficient to state a *Payne* action, even where Plaintiff admitted he was unaware of any regulation, guidelines, or policy authorizing the challenged practice. *Id.* (further noting that "[v]ery rarely do requesters ever know of an agency's activities behind the scenes of a request prior to litigation").

Accordingly, State cannot rely upon the reasoning used in *ACLJ II – i.e.*, that the statistics State has presented with regard to FOIA improvements and average response times are consistent with the delay experienced by Plaintiff, and thus Plaintiff is treated no differently than other FOIA requestors. *See ACLJ II*, 289 F. Supp. 3d at 89 (finding that because ACLJ's wait time was under the Department's average time for responding to a simple FOIA request, the statistics did not support ACLJ's claim that it is treated differently than other FOIA requestors). ACLJ's wait time has far exceeded the average time for responding to most requests. This, coupled with State's continued failure to provide Plaintiff with a tentative determination and/or release date for documents and facts demonstrating that State denies requests for expedited processing where other agencies readily grant them, is a firm and impenetrable barrier to summary judgment here. State's conduct with regard to Plaintiff's FOIA requests has impaired, time and again, the "lawful access to information" and there is no end in sight for these unlawful practices. Indeed, even when the evidence is construed in the light most favorable to State, it is undisputed that State's conduct has

only worsened with regard to the timing of its responses to FOIA requests – forcing lawsuits for any FOIA requestor hoping to obtain documents in less than 1-2 years, including Plaintiff ACLJ.

### IV. Even If The Undisputed Facts Demonstrated A Pattern of Nothing More Than Incessant Delay, Such Conduct is Sufficient to Warrant Injunctive Relief.

State attempts to boil Plaintiff's Count II down to a mere failure to meet FOIA's 20-day timeline. Not surprisingly, State maintains that even in the face of incessant delay, unmatched by all other agencies, its conduct is not egregious and does not warrant equitable relief under *Payne*. In fact, State asserts no responsibility for its actions and, instead, blames the increase in FOIA requests and FOIA requestors who have chosen to enforce the law by bringing suit to force State's compliance. As demonstrated above, such an argument requires a complete ignorance of the undisputed facts presented in this case and represents a disingenuous attempt to shift blame and diminish the gravity of State's own conduct over the course of several years.

State's contentions are also directly disputed by the Office of Inspector General. In 2016, the OIG attributed State's excessive delay to State's failure to adequately staff and train its FOIA department. The OIG specifically noted that it took State's Office of Secretary more than 500 days to process FOIA requests and that such delays were directly related to the Department's insufficient provision of personnel. State is unable to keep up with the steady rise in FOIA requests over the last several years because it intentionally and willfully skirted its responsibilities for more than four (4) years. Further, while State may assert with conclusory statements and self-serving affidavits that it has made an effort to strengthen its FOIA department and that it has no unlawful policies or practices with regards to FOIA – something it should be required to prove by providing documentary evidence to support such assertions, *see* Pl. Rule 56(d) Motion – such efforts remain woefully insufficient as State's average response times continue to increase, rather than decrease. In 2015, the average response time for State was 113 days for simple requests, 511 days for

9

complex requests and 102 days for expedited requests. In 2016, the average response time for State to respond more than doubled as to some requests: 342 days for simple requests, 517 days for complex requests and 135 for expedited requests. In 2017, response times again increased across the board and nearly tripled for expedited requests. There is no dispute that the delay and unlawful practices by State are not attributable to mere "mistakes," nor do they represent "isolated incidents." Further, while State asserts that it has made "reasonable efforts" to obtain additional resources to process FOIA requests, what is clear is that State knows these efforts are not sufficient. In addition to the evidence cited above, the OIG Report indicated that State would need to include 52 additional positions (and that until such time as all 52 positions were filled, OIG would not consider the recommendation resolved). State fails to identify how many, if any, of these positions it has filled.

Even assuming for the moment that State's conduct can be boiled down to mere delay, State's argument that its willful delay is not actionable ignores the clear instruction in *Payne* and subsequent case precedent. The *Payne* court explicitly stated that equitable relief is appropriate "when an agency's refusal to supply information evidences a policy or practice of *delayed disclosure or* some other failure to abide by the terms of the FOIA, and not merely isolated mistakes by agency officials." *Payne*, 837 F.2d at 491 (emphasis added).[2] Neither the *Payne* court

---

[2] Several courts have affirmed that repeated delay warrants relief under *Payne*. *See, Mayock v. INS*, 714 F. Supp. 1558, 1561 (N.D. Cal. 1989) (citing *Long v. IRS*, 693 F.2d 907 (9th Cir. 1982); *Payne*, 837 F.2d 486; *see also Our Children's Earth Found. v. Nat'l Marine Fisheries Serv.*, 2015 U.S. Dist. LEXIS 94997, *28 (N.D. Cal. 2015) ("[W]here the [agency] has repeatedly and substantially violated the time limits, and it is possible the violations will recur with respect to the same requesters, declaratory judgment is appropriate."); *S. Yuba River Citizens League v. Nat'l Marine Fisheries Serv.*, 2008 U.S. Dist. LEXIS 107177, *52-53 (E.D. Cal. June 20, 2008) (awarding injunctive relief based on the consistency of the FOIA violations, the fact that the agency had not ceased its practice of untimely responses, and the possibility that the violation might recur with plaintiff's fourth, pending FOIA request). Nonetheless, Plaintiff is not alleging mere delay here.

nor other courts finding a pattern or practice claim to have been established since *Payne* have made any distinction between unreasonable and intentional delays and other types of FOIA violations. The *Payne* court was quite clear that equitable relief is available for all such policy or practice violations, and "[t]he FOIA imposes no limits on courts' equitable powers in enforcing its terms." *Id.* at 494 (specifically noting that the district court's decision not to grant equitable relief was an abuse of discretion).

In *Payne*, the court's rationale for its decision to reverse the district court's denial of equitable relief was two-fold: "[t]he Secretary's inability to deal with AFLC officers' noncompliance with the FOIA, and the Air Force's persistent refusal to end a practice for which it offers no justification, entitle Payne to declaratory relief." 837 F.2d at 494 (citing *Long*, 693 F.2d 907, and noting the court's "reversal and remand for consideration of injunctive relief where IRS repeatedly released requested documents after suits were filed in effort to render suits moot"). Since *Payne*, the courts in *Muttitt* and *Nat'l Security Counselors* have reiterated that "the Court has the power to enjoin a FOIA procedural violation under the equitable jurisdiction of the FOIA itself *so long as that violation was 'in connection with the processing of the plaintiff's FOIA requests.'" Nat'l Sec. Counselors*, 898 F. Supp. 2d at 265 (quoting *Muttitt*, 813 F. Supp. 2d at 229) (emphasis added).

Numerous courts have rejected State's assertion that its conduct, if boiled down to mere delay, is insufficient to support a *Payne* action. *See Electronic Privacy Info Ctr. v. Dep't of Justice*, 416 F. Supp. 2d 30, 40 (D.D.C. 2006) (noting that "Congress [has] recognized that delay in complying with FOIA requests is 'tantamount to a denial.' H.R. Rep. No. 93-876, at 6 (1974)"); *Nulankeyutmonen Nkihtaqmikon v. BIA*, 672 F. Supp. 2d 154, 172 (D. Me 2009) (holding that "the

11

failure to comply with the statutory timeline in FOIA . . . can constitute a FOIA violation" and that "the BIA has improperly withheld agency records by substantially delaying their identification and disclosure"); *Info. Network for Responsible Mining v. U.S. Bureau of Land Mgmt.*, 611 F. Supp. 2d 1178, 1183 (D. Colo. 2009) (holding that "the BLM violated FOIA by failing to comply with this statutory deadline and that this failure resulted in an improper withholding under FOIA"); *Oregon Natural Desert Ass'n v. Gutierrez*, 409 F. Supp. 2d 1237, 1248 (D. Or. 2006) (finding that "defendants failed to make a timely determination, resulting in an improper withholding under [FOIA]"); *Gilmore v. Dep't of Energy*, 33 F. Supp. 2d 1184, 887 (N.D. Cal. 1998) (holding that "an agency's failure to comply with the FOIA's time limits is, by itself, a violation of the FOIA, and is an improper withholding of the requested documents"); *id.* (noting that "Congress has repeatedly stressed the need for timely compliance with the requirements of FOIA . . . . There can be no doubt that Congress took these deadlines very seriously.").

Notwithstanding this case law, State was finally successful in convincing a court to except from a *Payne* action its delay, despite evidence that such delay is attributable entirely to Defendant's willful dereliction of its responsibilities over a period of several years. In *ACLJ II*, the court, relying upon *Judicial Watch, Inc. v. Department of Homeland Security*, 211 F. Supp. 3d 143 (D.D.C. 2016) case now on appeal before the D.C. Circuit, *see* Case No. 16-5339 (D.C. Cir.), adopted State's argument. 289 F. Supp. 3d at 90 (citing *Judicial Watch, Inc.*, 211 F. Supp. 3d at 147). The court's reasoning rests on unsettled and conflicting case law within this circuit. In *Judicial Watch*, the first case in this circuit to suggest that a *Payne* action only applies to more egregious behavior, the court simply noted in a single sentence and without further explanation that the *Payne* case involved egregious behavior. 211 F. Supp. 3d at 147 (citing *Payne* and *Newport*

*Aeronautical Sales*, 684 F.3d 160).[3] Neither of these cases lends support to the court's decision to carve out excessive delay from a *Payne* action. The facts in *Judicial Watch* also differ significantly from those here. *Id.* at 146-47 (dismissing plaintiff's policy or practice claim because it was based on a single allegation that DHS was engaged in a practice of delay because it had not yet issued a determination on its FOIA requests and plaintiff admitted the delay could be "attributable to any hosts of reasons").

Additionally, the *Judicial Watch* case ignores the clear language in *Payne* analyzed above, and directly conflicts with a line of cases in this circuit. *See Nat'l Sec. Counselors*, 898 F. Supp. 2d at 265 (collecting cases). As the court held in *Nat'l Sec. Counselors*,

> FOIA policy-or-practice claims extend to **any** 'failure to abide by the terms of the FOIA.' *Payne*, 837 F.2d at 491. This Court has previously held that "where a plaintiff challenges an alleged pattern and practice of violating **procedural requirements** of FOIA in connection with the processing of **the plaintiff's** FOIA requests, the Court has the power under FOIA and *Payne* to provide the requested declaratory and injunctive remedies."

*Id.* (emphases added) (citing *Muttitt*, 813 F. Supp. 2d at 229; *Feinman v. FBI*, 713 F. Supp. 2d 70, 78 (D.D.C. 2010) (dismissing APA policy-or-practice claim because "the relief available under FOIA is of the 'same genre' as the relief available under the APA") (quoting *Garcia v. Vilsack*, 563 F.3d 519, 522 (D.C. Cir. 2009)). The court further noted that under *Payne* and *Muttitt* it "has the power to enjoin a FOIA procedural violation under the equitable jurisdiction of the FOIA itself so long as that violation was "in connection with the processing of the plaintiff's FOIA requests." *Id. (citing Muttitt*, 813 F. Supp. 2d at 229). Thus, setting *Judicial Watch* aside, the case law in this

---

[3] Shortly after *Judicial Watch* and in reliance upon it, the court in *Cause of Action* held a *single incident* of delay insufficient to state a claim under *Payne*. 224 F. Supp. 3d at 71; *id*. at 72 (citing *Judicial Watch, Inc*., 211 F. Supp. 3d 143). State quickly jumped on this bandwagon convincing the *ACLJ II* court that its excessive practice of delay – far exceeding the delay of other federal agencies – is not egregious enough to warrant injunctive relief. *See Am. Ctr. for Law & Justice v. United States Dep't of State*, 249 F. Supp. 3d 275, 283 (*ACLJ I*).

13

circuit is clear that the only consideration in deciding whether a *Payne* action lies is whether there is a repeated failure - "any failure" - to abide by procedural requirements of FOIA in connection with the processing of Plaintiff's requests, and such repeated failure is not a mere mistake. As the *Nat'l Sec. Counselors* court noted, "this conclusion is supported by the fact that it is well settled that courts have certain equitable powers under the FOIA that extend beyond the literal bounds of 5 U.S.C. § 552(a)(4)(B). 898 F. Supp. 2d at 265 (citing *Morley v. CIA*, 508 F.3d 1108, 1114 (D.C. Cir. 2007) (quoting *Weisberg v. Dep't of Justice*, 705 F.2d 1344, 1351 (D.C. Cir. 1983)).

In sum, the few courts willing to exclude delay from a *Payne* action have done so relying blindly upon the opinion in *Judicial Watch* that not only conflicts with the instruction in *Payne* and the bulk of its progeny but also is currently on appeal and thus constitutes unsettled law in this jurisdiction. Further, such reasoning is based on the assumption that delay is merely an isolated mistake and in recognition of the fact that delay may occasionally occur. *See ACLJ II* (citing *Citizens for Responsibility & Ethics in Wash v. FEC*, 711 F.3d 180, 189 (D.C. Cir. 2013) ("CREW") (simply recognizing – in determining whether an agency must issue a determination or produce responsive documents within the 20 day timeframe under FOIA – the *occasion* where an agency may not be able to adhere to timelines). The court in CREW did not consider whether an action under *Payne* would lie, much less whether such an action should lie in the face of never-ending delay (unless and until a lawsuit is filed). Thus, the instant case presents a different reality from the situation addressed in *CREW*. What happens when the undisputed evidence demonstrates that an agency *consistently fails* to comply with FOIA's timeframe, and 20 days turns into 509 days or more?

Finally, and as Plaintiff alerted the court in its motion to stay (Doc. 57), the court's decision in *Judicial Watch* has been appealed. *See Judicial Watch, Inc.*, Case No. 16-5339 (D.C. Cir.).

While State cited this case in its motion for partial summary judgment as persuasive authority in support of its argument that Plaintiff's claim is one of mere delay and is insufficient to establish a viable policy-or-practice claim, State has since backpedaled and now argues that the procedural posture of the case diminishes its significance and/or persuasiveness. Def.'s Response in Opposition to Plaintiff's Motion to Stay (Doc. 58), at 1-5. Such an explanation is simply invalid. First, the *ACLJ II* court relied upon the same case at the summary judgment stage. More importantly, one of the issues presented on appeal in the *Judicial Watch* case is "[w]hether the court erred in dismissing Judicial Watch's 'policy and practice' claim under FOIA." Brief of Appellant, *Judicial Watch, Inc.*, No. 16-5339 (D.C. Cir.). The lower court dismissed Judicial Watch's policy and practice claim on the grounds that agency delay by itself is insufficient evidence of an unlawful agency policy or practice of violating FOIA. *Judicial Watch, Inc.*, 211 F. Supp. 3d at 147. If the D.C. Circuit finds that "allegations of repeated delay, without more, [are] sufficient to] state a policy-or-practice claim under *Payne*," Def. Mem. in Opp. to Motion to Stay, at 3, it would reasonably follow that evidence of repeated delay, without more, is sufficient to conclusively establish such a claim. There is no question that the *Judicial Watch* case will bear directly on a decision rendered in this case. Accordingly, Plaintiff again respectfully urges this Court to abstain from issuing an opinion as to State's argument regarding mere delay until a decision is reached by the D.C. Circuit on the matter.

## CONCLUSION

State has failed to demonstrate that it is not engaged in a pattern and/or practice in its treatment of Plaintiff's FOIA requests and, in fact, has introduced evidence demonstrating precisely the opposite. Accordingly, this Court should deny Defendant's Motion for Partial Summary Judgment.

15

At a minimum, this Court should withhold its ruling on State's motion and permit Plaintiff to obtain the discovery set forth in the accompanying Rule 56(d) Declaration in order to obtain evidence that is solely in the possession of State but essential to dispute many of the facts offered in support of State's motion.

Respectfully submitted,

Dated: May 29, 2018

JAY ALAN SEKULOW
    (D.C. Bar No. 496335)
STUART J. ROTH (D.C. Bar No. 475937)
COLBY M. MAY (D.C. Bar No. 394340)
CRAIG L. PARSHALL*
/s/ *Abigail Southerland*
ABIGAIL SOUTHERLAND
    (TN Bar No. 26608)
CARLY F. GAMMILL
    (D.C. Bar No. 982663)
BENJAMIN P. SISNEY
    (D.C. Bar No. 1044721)
201 Maryland Avenue, N.E.
Washington, DC 20002
Telephone: (202) 546-8890
Facsimile: (202) 546-9309
Email: sekulow@aclj.org

*Counsel for Plaintiff*